IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JEREMY THOMASON, #M39074,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-00834-SMY |
| | ) |
| **DALLISON,** | ) |
| **SARA STOVER,** | ) |
| **WEXFORD MEDICAL PROVIDER,** | ) |
| **LACKEY,** | ) |
| **ROB JEFFREYS,** | ) |
| **FIERRO, and** | ) |
| **DEE DEE BROOKHART,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jeremy Thomason, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights at Lawrence Correctional Center. This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff injured the middle finger on his right hand while playing basketball during recreation on May 2, 2021. After returning to his cell, he noticed his finger was swollen and "turning colors." Plaintiff informed Sgt. Fierro of the injury, who stated he would call the health care unit (HCU). After four hours, Thomason had to remind Fierro to make the call. When Fierro called the HCU, he was told it was

understaffed, they were too busy to see Plaintiff, and to try again tomorrow.

The next day, Plaintiff showed Sgt. Walker his finger and Walker called the HCU. At the HCU, Plaintiff told Nurse Dallison that he believed he had a broken finger because it was crooked and purple. She responded that it did look "pretty messed up," but there was really nothing much that could be done. Plaintiff told her he did not want his finger to remain crooked. Nurse Dallison made a splint from a tongue depressor, gauze, and tape. She gave him Tylenol and stated she could not give him an ice permit.

Plaintiff was called to the HCU to see NP Stover on May 5, 2021. She changed the splint and told him she would continue with the splint in an effort to straighten his finger. NP Stover called him back to the HCU on May 7, 2021 for a follow-up. He informed her that he still had pain and something did not feel right. NP Stover increased the dosage of Tylenol and also prescribed Ibuprofen. She put on a new splint and ordered an x-ray. On May 10, 2021, Plaintiff returned to the HCU for NP Stover to replace the splint. He told her he was still in a lot of pain. She informed him she did not have the results of the x-ray yet. The following day, an unidentified nurse replaced the splint but did not wrap it correctly. Another splint was placed on Plaintiff's finger on May 16, 2021.

Plaintiff spoke to Director of Nursing Lackey on May 21, 2021 about his injury, his continued pain, his belief that his finger was broken, and the inadequate treatment he had received. She told him she would look into it.

Plaintiff was called to the HCU on May 24, 2021 to see NP Stover. She informed him that he had a fractured finger. He told her his finger continued to hurt "really bad." She changed his splint.

Plaintiff had a second x-ray on June 16, 2021. He saw NP Stover on June 25, 2021 and

she told him that the x-ray revealed his finger had not healed. He complained about his finger being "significantly crooked" and asked why they had not done more to fix it. NP Stover stated "it's just a crooked finger, it's not the end of the world" (*Id.*, p. 10). She placed another splint on his finger.

While speaking to Nurse Denise and Director of Nursing Lackey about another matter on August 2, 2021, Plaintiff told them that it had been three months since he injured his finger and the nurses continued to tell him there was not much they could do for his injury. The Director told him "it's just a finger, they probably won't do much for it" (*Id.*).

Plaintiff was called to the HCU to see Dr. Meyers on August 7, 2021. Dr. Meyers asked if he had been sent to an outside specialist and Plaintiff told him that Nurse Dallison and NP Stover told him that not much could be done other than placing the finger in a splint. Dr. Meyers scheduled another x-ray to determine whether he needed to be seen by an orthopedic surgeon. The x-ray was taken on August 10, 2021. Plaintiff sent request slips to the HCU on August 23, 26, and 29, 2021 complaining about pain. He was given Tylenol by Nurse Baker on September 1, 2021.

Plaintiff was sent to an outside hospital for an MRI on November 10, 2021. He saw Dr. Savino on November 16, 2021 and she informed him that she would be requesting surgery for his hand. He went to the HCU on December 14, 2021 and was told his surgery had been approved and he would be going to see a doctor for a consultation. On January 15, 2022, Plaintiff sent a request slip to the HCU requesting the status of the consultation. He received a response dated January 19, 2022, stating he was in the process of being scheduled for a consultation.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:[1]

---

[1] Any claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

Count 1:   Eighth Amendment claim against Dallison for exhibiting deliberate indifference to Plaintiff's serious medical needs relating to his May 2, 2021 finger injury.

Count 2:   Eighth Amendment claim against Stover for exhibiting deliberate indifference to Plaintiff's serious medical needs relating to his May 2, 2021 finger injury.

Count 3:   Eighth Amendment claim against Lackey for exhibiting deliberate indifference to Plaintiff's serious medical needs relating to his May 2, 2021 finger injury.

Count 4:   Eighth Amendment claim against Jeffreys for exhibiting deliberate indifference to Plaintiff's serious medical needs relating to his May 2, 2021 finger injury.

Count 5:   Eighth Amendment claim against Fierro for exhibiting deliberate indifference to Plaintiff's serious medical needs relating to his May 2, 2021 finger injury.

Count 6:   Eighth Amendment claim against Brookhart for exhibiting deliberate indifference to Plaintiff's serious medical needs relating to his May 2, 2021 finger injury.

Count 7:   Eighth Amendment claim against Wexford for a policy or practice of allowing nurses and nurse practitioners to treat inmates beyond their level of skill, knowledge, and training which resulted in a denial of constitutionally adequate medical care for Plaintiff's May 2, 2021 finger injury.

Count 8:   State law claim against Dallison for providing negligent medical care for Plaintiff's May 2, 2021 finger injury.

Count 9:   State law claim against Stover for providing negligent medical care for Plaintiff's May 2, 2021 finger injury.

Count 10:  State law claim against Lackey for providing negligent medical care for Plaintiff's May 2, 2021 finger injury.

Count 11:  State law claim against Jeffreys for providing negligent medical care for Plaintiff's May 2, 2021 finger injury.

Count 12:  State law claim against Fierro for providing negligent medical care for Plaintiff's May 2, 2021 finger injury.

---

(2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

Count 13:   State law claim against Brookhart for providing negligent medical care for Plaintiff's May 2, 2021 finger injury.

Count 14:   State law claim against Wexford for the negligent medical care provided by its employees for Plaintiff's May 2, 2021 finger injury.

## Preliminary dismissals

Plaintiff refers to individuals in his statement of claim who are not named as defendants. Federal Rule of Civil Procedure 10(a) requires the names of all parties to be included in the case caption. Claims against any individuals not identified as defendants in the case caption are therefore **DISMISSED**. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

Additionally, Plaintiff names Rob Jeffreys as a defendant but does not make any factual allegations against him; he seeks to bring a claim against Jeffreys in his capacity as the IDOC Director based on his alleged authority to establish, alter, and implement policy and procedure. To state a viable § 1983 claim, Plaintiff must allege that each defendant was personally involved in the alleged constitutional deprivation. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). Jeffreys cannot be held liable for the actions of subordinate employees, as the doctrine of respondeat superior does not apply § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Absent allegations describing what Jeffreys allegedly did or failed to do in violation of Plaintiff's constitutional rights, the claim against him in Count 4 will be **DISMISSED**. Further, because there are no allegations establishing Jeffreys involvement in Plaintiff's medical care, the claim in Count 11 will be **DISMISSED**.

## Discussion

### Counts 1, 2, 3, 5, 6, and 7

Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical

needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

The allegations in the Complaint are sufficient to proceed against Dallison (Count 1), Stover (Count 2), and Lackey (Count 3). Plaintiff may also proceed against Wexford (Count 7) based on the allegation that it has policy or practice of allowing nurses and nurse practitioners to treat inmates beyond their level of skill, knowledge, and training. However, because *respondeat superior* liability is inapplicable in this context, Wexford cannot be liable for an Eighth Amendment violation caused by one of its employees based solely on the employment relationship. *See Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014).

Plaintiff's allegations are not sufficient to proceed against Fierro (Count 5). As a correctional officer, Fierro could not provide medical care himself nor could he force the HCU to see Plaintiff. Although he forgot to make the call to the HCU for four hours, that does not constitute deliberate indifference in this context.

The Complaint allegations are also insufficient to proceed against Brookhart (Count 6). Here only alleged knowledge regarding the issues was via Plaintiff's grievances. According to the grievances and the HCU's responses, Plaintiff was receiving medical treatment. As a nonmedical administrator, Brookhart was entitled to defer to the judgment of the medical professionals so long as she did not ignore Plaintiff. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

**Counts 8, 9, 10, 12, 13, and 14**

Plaintiff seeks to bring state law medical negligence claims against all defendants. When a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). As Plaintiff's allegations of medical negligence derive from the same facts as the Eighth Amendment deliberate indifference claims, the Court will exercise supplemental jurisdiction over the state law claims.

An Illinois medical negligence claim requires the plaintiff to show: (1) the applicable standard of care; (2) the defendant breached the standard of care and was negligent; and (3) and the breach was a proximate cause of the plaintiff's injury. *Chambers v Igram*, 858 F.2d 351, 355 (7th Cir. 1988). Plaintiff's allegations are sufficient to proceed on medical negligence claims against Dallison (Count 8), Stover (Count 9), and Lackey (Count 10), the medical professionals who were involved in his medical care.[2] He may also proceed on his claim against Wexford (Count 14) based on the allegation that the medical professionals were Wexford employees. *See Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014) (pointing out that "[m]edical negligence by one of Wexford's employees could support liability under state tort law but not the Eighth Amendment"). However, Fierro (Count 12) and Brookhart (Count 13) are not medical professionals and were not involved in his medical care. As such, Plaintiff cannot state a medical negligence claim against them. Counts 12 and 13 will be **DISMISSED**.

---

[2] Plaintiff has not provided the affidavit and medical report required under Illinois state law, *i.e.*, 735 ILCS § 5/2-622. If he intends to proceed with this claim, Plaintiff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). His failure to do so is not dispositive of his claim at this point. *Id.* However, Plaintiff must comply with the requirements set forth in 735 ILCS § 5/2-622 before summary judgment on the merits of the case.

### Request for Injunctive Relief

The Warden of Lawrence Correctional Center, in his/her official capacity, will be added to the docket for purposes of Plaintiff's request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as the warden would be responsible for ensuring that any injunctive relief would be carried out).

### Official capacity claims

Plaintiff asserts claims against the individual defendants in their individual and official capacities. The injunctive relief claim is properly brought against the Lawrence Warden in an official capacity. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005). Accordingly, the official capacity claims against Dallison, Stover, and Lackey will be **DISMISSED**.

### Disposition

Following preliminary review under § 1915A the following claims will proceed: Counts 1 and 8 against Dallison, Counts 2 and 9 against Stover, Count 3 and 10 against Lackey, and Counts 7 and 14 against Wexford. Counts 4, 5, 6, 11, 12, 13 and Rob Jeffreys, Fierro, and Brookhart are **DISMISSED without prejudice**. Additionally, the official capacity claims against Dallison, Stover, and Lackey are **DISMISSED**.

The Clerk of Court is **DIRECTED** to **TERMINATE** Jeffreys, Fierro, and Brookhart as parties and **ADD** the Warden of Lawrence Correctional Center, in his/her official capacity, to the docket for purposes of Plaintiff's request for injunctive relief.

The Clerk of Court **SHALL PREPARE** for Dallison, Stover, Lackey, and the Warden of Lawrence Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and

Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days**

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act

**IT IS SO ORDERED.**

**DATED:** July 21, 2022

*s/ Staci M. Yandle*
STACI M. YANDLE
U.S. District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve the Defendants with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer or other responsive pleading, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answer(s), the Court will enter a Scheduling and Discovery Order containing important information on deadlines, discovery, and procedures. **Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff should not submit any evidence to the Court at this time, unless specifically directed to do so.**